This is case, it's Alliance for the Wild Rockies v. Higgins, case number 24-1500. And we'll hear first from Ms. Smith. Good morning, your honors. May it please the court, my name is Rebecca Smith and I represent the Appellant Alliance for the Wild Rockies. I would like to reserve five minutes for rebuttal. Thank you. Because the panel is already familiar with this case, I'm going to dispense with sort of the normal procedural background and general factual background and just move right into what is the key issue here before the court. Before I dive into that, there's just two sort of key facts from the statutes here that I want to touch base on. First is that under section 6591B of the Healthy Forest Restoration Act, the Hanna Flats Project was exempted from the administrative review process as a categorical exclusion. And then the second part of the relevant statutes is that under section 6515 of the Healthy Forest Restoration Act, that provision is the administrative review provision and that provision is the only administrative review. It's the sole administrative review provision and it's the only place in the statute that has any kind of scoping comment requirement, administrative exhaustion requirement or issue exhaustion requirement. And so the question presented really to the court today sort of boils down to whether the court should impose a judicially created issue exhaustion requirement here. Hold on. You keep calling it judicial exhaustion. Aren't we running into the same problem we had before? I mean, I thought that's what we said before was this isn't an exhaustion issue. This is a question of whether you waived it by not raising it. And thank you, Your Honor, for that. There is a doctrine of exhaustion of administrative remedies and then there's a separate doctrine of issue exhaustion, which in the Petrick opinion, this court referred to as administrative waiver. And so my reference to 6515 is that we have both of those doctrines, both administrative waiver, also known as issue exhaustion and exhaustion of administrative remedies are both addressed in 6515 and only applied there to EAs and EISs. Right. But I think the Supreme Court at least seems to have indicated that with respect to exhaustion of administrative remedies, we really look to the statutes. But with respect to waiver slash issue exhaustion, that when a statute and regulation does not require it, it is actually still something that courts may and have routinely imposed. And so then I tend to agree with you. The question is whether we should in this instance. Yes, Your Honor. And then that goes to the case that the court requested that we discuss today, Carvey-Sall from the Supreme Court. That was the precise issue in Carvey-Sall. The issue there was that the Social Security regulations did not require issue exhaustion. And so the Supreme Court addressed the issue of whether it should nonetheless impose a conditionally created issue exhaustion. And what the court did in Carr, similar to what it did in Sims, was it said there is a test for that. And the test is how similar to normal adversarial litigation was the administrative proceeding that was offered in this case. So before we get there, I want to be clear. Do you think that the statute addresses issue exhaustion in this case? Yes, Your Honor. And I'll show you why. Well, let me give a more nuanced answer there. The statute does address issue exhaustion, but it only applies it to projects that are analyzed in an EA or EIS. So this wasn't because the Forest Service took the position that the exclusion applied?  And so you agree that in that context, the administrative exhaustion scheme doesn't apply and therefore also issue exhaustion if the statute addresses it doesn't apply?  That is our statutory interpretation argument, Your Honor. Okay. And so then if that's the case, then you would agree if Carr applies, then we would be at step two, because there's no statute that governs the issue, and we would be assessing whether this proceeding looks adversarial or not? Correct, Your Honor. And I think there are basically five different factors you can sort of pull out of the Carr case when they're analyzing whether a proceeding was sufficiently adversarial. And those factors were things like were lawyers required in the administrative proceeding? Were briefs required to be filed in the administrative proceeding? Were participants notified that a failure to raise issues would result in a forfeiture of those claims during any subsequent litigation? Another factor they looked at is the participant, in that case the claimant, solely responsible for investigating the facts and developing issues. And then a fifth factor they looked at was is the proceeding characterized by the agency itself as adversary? And these factors can be found at pages 90 to 96 of that opinion. And in every one of those questions, the answer in Carr was no. And in every one of those, for every one of those questions here, the answer is also no. So we don't have any briefing from the parties on Carr, which is why the court asked the parties to be prepared to address that today. Carr obviously was in a different context, right? Social Security, ALJ proceedings, sort of quasi-adjudicative proceeding. And also the decision in Carr talked a lot about futility and sort of some unique things going on in that case. Why does Carr apply here? Well, Your Honor, first Carr applies because of those five key factors that I just addressed. In Carr, everyone, the answer to everyone was no here as well as everywhere. But even before we get there, couldn't we say, well, Carr seems to apply to a particular context? Maybe not just Social Security, but maybe sort of quasi-adjudicative ALJ kind of proceedings. And that's not what this is, so it wouldn't apply here. Why shouldn't we say that? Because, Your Honor, what Carr addressed was a spectrum. And what Carr said was the more likely your administrative proceeding is like adversarial litigation, the more likely we would impose issue exhaustion. When you have something like this case at the far end of the spectrum, it doesn't that sort of answer the question. This isn't an adversarial proceeding. Correct, Your Honor. And that is precisely why under the Supreme Court's decision in Carr, no issue exhaustion requirement can be created and imposed by the court in this case.  I don't read Carr to say that. I mean, I've always understood notice and comment. It doesn't make any sense to have a notice and comment requirement and then allow parties not to make a comment and then say, that's okay, you still have to address it. And here, as in Carr, there is no comment requirement. Just in the regulations and the statute, just as there was not in Carr. There is no requirement. Once they go out for notice and comment, that's why you go out for notice and comment. Your Honor. Is to get comment. What's the purpose of notice and comment? So you're saying they didn't even need to do notice and comment here? No, Your Honor. Notice and comment are two separate things and that's important not to conflate. A scoping notice is absolutely the obligation of the agency under this statute. The agency absolutely has to give notice to the public of these activities happening on public land. There is no reciprocal requirement that the public respond with mandatory comments. And that's why we're in Carr. Whoa, whoa, whoa. There's never a requirement that, I mean there's a requirement that you go out for notice and comment. You're saying scoping is different than notice and comment. And Your Honor, this is why it's important that we have to look at the exact statute at issue here. There absolutely is a comment requirement under the Healthy Forest Restoration Act, Section 6515 Administrative Review Process. This is at 6515. I just want to back up because your argument seems to be that unless the statute requires a party to file a comment, that there can never be an issue, there can never be administrative waiver. I've never understood administrative law to be that. I mean, that's not what the district court said and I thought the district court cited some pretty compelling cases for this. That is not our argument, Your Honor. Okay. The argument is when there is no statutory or regulatory requirement, the court analyzes the Carr factors to determine whether the administrative proceeding was so like an adversarial litigation proceeding that it's appropriate to create a judicially imposed issue exhaustion requirement. This is the Carr issue. If it's not required by statute or regulation, here is the test. Is it like an adversarial litigation proceeding? Here it was not. No lawyers, no briefs, no notice to the parties of forfeiture, all of those five factors met in Carr are met here. But I do want to go back to Judge Forrest. I did hear your question about there being other considerations in Carr. For example, they talked about the fact that it was a constitutional claim and then they also talked about the issue of futility. And so those two additional considerations are not present in this case, but there are two different additional considerations in this case. And that is that we have a statute, and we're talking about statutory interpretation. And in the Loper-Bright decision by the Supreme Court, the Supreme Court said if your statute is ambiguous, you can no longer just defer to the agency. The court has to apply tools of statutory construction. So we have that Loper-Bright directive, and then we do have a statute here. And that statute does require comments, but only for EAs and EISs. And there is a very common tool of statutory construction that says when you have a list of things and some things were excluded, you must interpret those exclusions as omissions. Your position is anytime there's a scoping process under the Healthy Forest Restoration Act, you can just sit on the sidelines, not file a comment, not say anything, and then challenge whatever the Forest Service does. No, Your Honor, that is not our position because... You're saying there's no administrative waiver? No, Your Honor, what we're saying is that Section 6515A3, it states, to be eligible to participate in the administrative review process, a person shall submit to the Secretary during scoping or the public comment period specific written comments. What we're saying is there is actually an express requirement for comments under the Healthy Forest Restoration Act, but it only applies to EAs and EISs. I know, that's why my question was for scoping. When they do scoping, you don't have to comment on it. For EA or EIS, you do, yes, Your Honor. Is your question... So I think we're getting lost here. So if we had a situation where the exemption that the Forest Service claims applies, and so all they're going to do in terms of public interaction is scoping, not notice and comment, if somebody was aware that that was going on, the scoping process, but said nothing, and later tried to sue to say that the Forest Service had, you know, acted outside the scope of its authority, could they do that? Even though they said nothing during scoping? Under the test in CAR, yes, Your Honor. And I'd like to just... Well, I know you've acknowledged that CAR didn't rely solely on the nature of the proceedings, right? The adversarial or lack thereof nature of the proceedings was a series of considerations. But the way I read CAR is saying, and then on top of that, there are two other considerations that tip the scales in favor of not requiring issue exhaustion. And in their footnote, they say, if this had been a routine social security matter, the balance may have come out differently. So I think they... The way I read CAR is that it actually depends on the nature of the issue. And they had both constitutional issue that was not within the regular scope of the agency's expertise, as well as a futility problem, because the agency itself was telling ALJs not to address this particular type of objection. And you've now acknowledged those two factors would not tip, essentially, the balance in favor of not applying issue exhaustion in this particular case. So I don't think... I mean, the way I read CAR, I don't think we can actually make a categorical decision. Either there is issue exhaustion or is not, but it seems to me that we have to have some kind of case-specific, issue-specific consideration here. So I think there, then you're... I think you're arguing that there is a case-specific consideration here because of the statutory interpretation nature of the objection that you're raising. That's correct, Your Honor. Okay. Do you have any authority that would suggest that that is the type of issue should tip the scales in your favor here? Lope or Bright, Your Honor, would be the case, because it says the courts must apply tools of statutory construction to an ambiguous statute. And the government's argument here is essentially that it's ambiguous whether categorical exclusions are acceptable. But is there an issue exhaustion issue in that case, though? No, Your Honor. I'm just talking... You're just saying because of the nature of the statutory interpretation question. The problem is, I mean, you seem to be diverting away from what the district court relied on. And what I understand the rule to be, at least how I've understood administrative law. So I mean, I got to dig into this more. But there's a general requirement that you have to make... You have to present your comment to the agency first, or you don't get to challenge it. And you seem to be saying, no, but the statute... That's where your Lope or Bright comes in, is the statute has exempted that general background. But I mean, I guess that's the whole question is, does the statute actually do that? Yes, Your Honor. And I want to make two points on that, and then I'd like to reserve my remaining time for rebuttal. The first point is that all of the cases cited by the district court were under a different statute. None were under the Healthy Forest Restoration Act. And the second point there is that every single one of them had an administrative review process. And what the Supreme Court said in Carr is, we're looking at that. We're seeing that it's adversarial, and that's how we decide if we impose issue exhaustion. How adversarial was the administrative review process? Every case cited by the district court had an administrative process. We were specifically exempt from any administrative review process here. So we're on this far end of the spectrum where there was no adversarial nature at all. In fact, just as in the Social Security regulations where they say it's non-adversary, here in the statute they're calling it collaborative. It's the exact opposite of an adversarial proceeding. And there is no case law when there is no administrative review process provided, when it's a completely non-adversarial proceeding, that a court would then impose a judicially created issue exhaustion requirement, when you also have a statute that seems to be excluding these categorical exclusions from such a requirement. And I'd like to reserve my remaining time. Thank you.  May it please the Court, my name is Joan Pepin on behalf of the Forest Service. I'd like to go straight to the issue of Carr v. Saul and whether it applies here. This case is governed by public citizen, not Carr v. Saul. Those two Supreme Court decisions represent two distinct lines of cases in which the Supreme Court has looked at a very similar issue in two very dissimilar contexts. In both sets of cases, the Court recognized the basic rule, as this Court did in Petrick, that unless there's some exception, a failure to raise your argument before the agency, such as in comments in a public comment process, usually weighs a litigant's right to make that same argument in court. In Sims v. Apfel, I'm sorry, in Carr, in Carr, the Court looked at that in the context of social security disability proceedings, a quasi-judicial, individualized adjudication. And in public citizen, and in Vermont Yankee, the Supreme Court looked at that in the context of public environmental review processes, and they came to very different results in those two cases. So I have a question about that. Yes. It seems to me that in Carr, when they're setting up this rule about when the statute is silent, then we go to this analogy about how adversarial the proceeding is. They're not just citing quasi-adjudicative authority. They're citing cases that go broader than that. So it suggests that they're setting up a general principle of administrative law. Yeah. If we didn't have two other cases, then let me give a little more background. Everything that Carr v. Saul says about how adversarial this is and how much it looks like an American judicial proceeding rather than a European or Latin American judicial proceeding, inquisitorial style, all of that comes from the Supreme Court's earlier case in Sims v. Apfel, which Carr cites on every point on that. And that case was decided in 2000. And then four years later, the unanimous Supreme Court held in public citizen that waiver applied in the NEPA context to the plaintiffs in that case had not raised certain objections to the EA in that case, that those were not before it. But public citizen is the NEPA context, as you just said. And in public citizen, was there a statute that required exhaustion? No, NEPA doesn't require terminology. None of them require – I don't know about exhaustion, but as far as waiver, NEPA does not require it and the regs at that time did not require it, and the regs at the time of this decision did not require it. So it was a judicially imposed requirement in public citizen and in Vermont Yankee. And yet the Supreme Court – here's what's really interesting. And Vermont Yankee wasn't a NEPA case, was it? Yes, it was. Oh, it was. They were both NEPA. So do we have cases outside of the NEPA context that also apply administrative waiver? The other big context where this comes up is notice and comment rulemakings, where it's also judicially imposed. Can we analogize those or not? I mean, would you say that – because that's how – I guess that's my problem with this is I kind of come at this from a notice and comment. I mean, I view this as similar to a notice and comment, and I've always understood notice and comment to impose administrative waiver. Right. So often when we say notice and comment, we think of formal rulemaking under the APA. But notice and comment applies to many things, including this categorical exclusion. The statute required the Forest Service to hold a collaborative process at the end of which they would produce a scoping notice, which went out for notice and comment. And so the plaintiffs, as the district court held, had the opportunity to provide these comments. They had notice of all the issues, and they provided many comments, but not this one. And that is the classic, under public citizen and Vermont Yankee, is the classic situation. I guess, counsel, to me – sorry to interrupt. There's limited time. So I think there's a way to reconcile CAR with public citizen and Vermont Yankee, which is essentially that still we have to consider whether we should actually judicially impose an issue exhaustion requirement considering, you know, the factors, and that I think it's certainly under Vermont Yankee and public citizen, certainly compelling argument that generally we should. But then that's still – I think we still have to engage in the CAR analysis of whether we should in this case, considering the nature of the process as well as the nature of the issues raised. Now, counsel on the other side has conceded that the exact same considerations of a constitutional issue and futility are not present here. But they're arguing because this is essentially a pure question of statutory interpretation, that's a similar consideration, is what I take to be their argument. Can you respond to that? Sure. I think CAR and its factors do not apply here, and here's how we can – You think CAR just has absolutely no application here? I really do. Okay, can you assume for this – all right, you can address that argument. Well, can I just say why? Sure. The Supreme Court decided in Vermont Yankee that the waiver rule applies to NEPA proceedings. When they decided SIMS versus APFL, which was also Social Security Disability Hearings in 2000, they didn't even cite Vermont Yankee. They held exactly the same thing they held in CAR. And then four years later, unanimously, the Supreme Court didn't even cite SIMS versus APFL when they applied the waiver rule in the NEPA context to an EA. And then in CAR versus APFL, they didn't cite public citizen or Vermont Yankee. It seems like the Supreme Court doesn't think these two lines of cases are really very related to each other. One is very limited, and this court actually has a precedent, Universal Health Services, which you've also cited in Petrick, that talked about SIMS in that context. That was a notice-and-comment rulemaking case, and the plaintiff in that case said, SIMS, we should look at how adversarial it is, and, you know, the waiver doesn't apply anymore. And this court held that SIMS, quote, turned on the unique nature of Social Security benefit proceedings and offers no guidance relevant to rulemaking. I think it also offers no guidance relevant to the kind of public environmental procedures involving this case involved two years of public process of site visits and meetings and a 44-page scoping notice with environmental analysis that was sent out for public comment, receiving that comment, changing the decision. And, you know, I think the Supreme Court took these factors into consideration, the nature of the proceeding. The Social Security benefits at issue, those hearings were very short. In SIMS v. Apple, the one in 2000, the sources cited by the Supreme Court said that the types of hearings that were at issue, the judges had 500 a month to decide, spent an average of 15 minutes on each case. Compare that to the two-year for a categorical exclusion process in this case. So when you're saying the agency has to do it over even though the issue wasn't raised before them, the adverse consequences to the agency compared to the rights of a disability complaint were in a very different balance than they are here. I mean, I understand that argument, and we're at a disadvantage here because we don't have any briefing on CAR, and we're raising that for the first time in argument, and perhaps we need supplemental briefing. But there are other circuits, including notably the D.C. Circuit, which is applying CAR more broadly than you're suggesting, including in an FDA drug approval context, and saying, in this context, there is no statute that requires this issue exhaustion. Therefore, we're going to look to the judicial, you know, whether we should exercise our discretion, our prudential right to impose a judicial requirement, and looks exactly to CAR to answer that question. Well, I'm certainly not saying that CAR has to be narrowly confined to only social security disability proceedings. But I think it is – I think you can certainly infer from the Supreme Court's concerns and the reasons they talked about how this was a single-page form with three lines to write your issues, and that it was expected to take 10 minutes, that they were talking about – they had a lot of concern about the fact that these litigants are usually unrepresented and that this is supposed to be a simple, user-friendly process. Now, I'm not saying NEPA isn't, but those factors were very important in the social security cases, and that context is these individualized adjudications, quasi-judicial actions. And the appropriate precedent for large public processes is Vermont Yankee and public citizen. And I've talked a little bit about the consequences to the agency. I'd also like to talk a little about the incentives, and I think the Supreme Court recognized this one in Vermont Yankee. A social security disability claimant has no incentive to withhold any issues and wait for litigation. Delay hurts them, right? So they have no incentive to do that. Whereas, if you were not to have the waiver rule in these big environmental public processes, I would think a litigant's incentive would be to hold their peace, wait for court, and then they can raise the issues. And when the agency tries to defend itself, say, well, you can only defend the agency decision on the reasons given by the agency, and the agency didn't address this. That's where that goes, because the context will inform that to some degree, right? So if you're in a NEPA analysis and your challenge is, you know, there's an alternative that you should have considered in this environmental project, your APA challenge is going to be failure to consider all the relevant information presented. But you're not going to be able to make that APA challenge unless you have actually presented a new alternative to the agency for it to consider. So in this context, the argument is different. The argument is that the government is acting outside of the scope of its statutory authority by applying an exception that hasn't been, that the legal requirements haven't been met to. So it applies differently in terms of how, because the government always has the requirement to act lawfully, to follow its statutory requirements. And so the incentives, as you're talking about, and the sort of the burdens on both sides of the V are different in a context where you're arguing about government power as opposed to, I have a new idea I want the government to consider. I don't really feel like this case is about government power. This categorical exclusion exists. The agency made certain findings. They dispute one of the findings. The finding was that this is in the wildland-urban interface, and they believe that there's not sufficient evidence in the record to support that finding. It's not really about the government's power to act. Well, and indeed, wouldn't we, we could have the same exact context in an EA if you were doing an EA. You could, I mean, yeah, the government has a duty to comply with the law, but if someone's not pointing out that they're not complying with the law, we would say it's administratively waived in the EA context. I mean, you could have a question about whether you've considered alternatives and what the definition of alternatives is, and if they don't raise that argument, they can't come in later and say, oh, well, you didn't comply with the statute. That's right, and that's exactly what, well, this court has held it so many times, and I would argue that this court is bound by that precedent, including two cases that post-date Carr. One would be your own prior decision in Petrick, and the other would be Earth Island Institute. By the way, I wanted to ask about that. To what degree does, I mean, it's interesting because we've sort of gotten diverted from the issue that we actually remanded on. Yes. And to what degree does Petrick already answer this question? Well, you know, the plaintiffs have provided some briefing about law of the case, and they cited a case called Leslie Salt that says the scope of subsequent appeal is narrowed to the limitations of the remand. And in this case, the remand was, does the fact that a categorical exclusion was used in this case make this an exception to the waiver rule? I would say getting into Carr v. Saul, and is this more like a quasi-judicial proceeding, is going far afield from that. Well, I don't, I guess I don't understand that. In Hannah Flats I, we said, we remanded to say district court, you determine whether administrative waiver applies here. That's the question we're talking about. How is that outside the scope of the remand? Well, because the court had already reaffirmed the basic doctrine of administrative waiver in its opinion. Well, if we had decided administrative waiver, why would we have remanded for the district court to decide whether waiver applies? Because in the district court, the district court had found that they did raise the issue, right? And so it didn't confront a secondary argument they had made that said, well, this is different because it's a categorical exclusion, and the waiver rule shouldn't apply to categorical exclusions. So this Court, and the district court never reached that argument because it said they did raise it. This Court found that the district court was wrong about that. They hadn't raised it. And so remanded for consideration of that unaddressed issue. But whether it was waived, and that's what we're asking about. Whether the use of the categorical exclusion made the difference, yeah. So, you know, if you were to try and analogize environmental, public environmental review processes to Carr v. Saul, that's going way beyond the scope of the remand. Well, I tend to agree with you in this sense. The presumption in our Petrick opinion was that there is a general administrative waiver requirement. And we said that wasn't met here. And then we remanded to say, yeah, but is there something about this categorical exclusion that exempts that? Yeah. I think. Is that a fair restatement of what we did? I do think that's correct. And I hope I'll have time to turn to that. I just wanted to add, you know, there are also many cases for this court, like Lands Council, Buckingham, Barnes, all cited in the briefs, although they might be the other, that apply the administrative waiver rule to NEPA cases after SIMS, which basically has the same holdings that are relevant or, well, that aren't relevant in our opinion. The holdings about we don't do this in, we only do this in adversary things and the less adversary it is, that is confined to the spectrum of quasi-judicial proceedings. The cases where the big public process are governed by a different line of cases, public citizen and Vermont Yankee. And beyond that, I would just also add that the. Is that your argument that if it's an adversarial proceeding, then we look to the car factors, or the more adversarial it is, we look to the car factors, the more open. No, no. It's not the adversarialness or not. That is a car factor. But whether the car factors even apply, that line of cases is confined to the kind of quasi-judicial, individualized determinations like Social Security benefits hearings. I'm not saying it's only Social Security benefits hearings, but it would be individualized determinations. What about that D.C. Circuit case that Judge Forrest mentioned? Was that a. . . I'm so sorry. I'm just not familiar with that one. We might need supplemental briefing. If the court decides to go, you know, to dig into this Carver v. Saul issue, then I certainly think that supplemental briefing would be necessary. But I would just caution that this case is governed by public citizen, right? I mean, this is not technically NEPA, but it is. . . I mean, you look at it, is this more like a Social Security benefits determination or is it more like an EA? It's obviously much, much more like an EA. And I should probably turn quickly to the principal argument that they're also making about the statute and whether the statute provides an exemption here. It simply does not. . . This Lubber, Bright, and Deference have nothing to do with this argument at all. We've never argued for deference. But we're certainly allowed to advance our own statutory interpretation argument, and the statute is quite clear. It says absolutely nothing whatsoever about exempting them from the judicially imposed administrative waiver rule. That's simply not in there. They would like you to infer it from two different provisions. The first provision is the administrative review provisions, which is sort of like an administrative appeal process. And that process, if you want to, you have to take one of these administrative appeals as an exhaustion of administrative remedies matter. And in order to take one of those administrative appeals, you have to first raise your issues and comments. Then, I think it's 11 years later, Congress amended the Healthy Forest Restorations Act, added this categorical exclusion that this litigation has all been about. And, you know, we've talked about before how the purpose of that was to expedite things, because these forests were getting sicker and sicker before the projects could be done in there to try and make them healthy again. And so the categorical exclusion was intended to expedite that. And as part of that expediting it, Congress exempted them from the review process, because that's just another administrative process that would have to be gone through. It would slow things down. I think that's pretty clearly Congress's statutory intent in exempting these decisions under the categorical exclusion provision from the administrative review process. They're just trying to expedite things. So I want to ask a question about that. If you're assume, for the purposes of my question, that you're in that world, that the categorical exclusion applies, do you think that there is a statutory provision for issue exhaustion in that context?  There's no statutory provision one way or the other. So you agree with Counsel for Alliance that there is no statute that governs this topic? Right. That's correct. And so what they want you to do is infer a statutory exemption, and it's just not rational. There's no reason to believe that Congress intended. As one of the cases we've cited in our brief says, this expressio unius canon only applies when there's reason to believe that Congress thought about it and meant to exclude it. There is — it's impossible to think that Congress in this case, when they were saying we want these projects to move, we're going to create a categorical exclusion, we're going to exempt it from the administrative exhaustion requirements, that they said, but let's make it so that they're also exempt from the requirement to raise their issues before the agency so that they can just not comment and then go straight to court and send the agency back to square one. Before we run out of time, I have a practical question. If we disagree with you and conclude that waiver doesn't apply here and that Alliance can raise this argument even though it didn't raise it in the comment period, where does that leave the rest of this case? The rest of this case is Hanna-Flatts 2, which is — we just had a summary judgment hearing. Was it a summary judgment? Had a hearing in the district court late February, and that's the issue about roads that you may remember from the last case, the last appeal. That's the only issue in that case. So I'm not — have I answered your question? I'm not quite sure. So if we say that — Well, we would have to remand, wouldn't we? Yeah. So if we say that Alliance didn't forego its ability to bring this challenge to the categorical exclusion applying, then won't the district court have to go back and look at — I mean, this is where I'm a little bit confused because we say a few things about that in our prior decision about application of the categorical exclusion and the agency's interpretation of the requirements of that exclusion. But there's still something to be done there, right? I misunderstood your question. What would become of this — I guess we'd go back for a determination on the merits of whether — of whether this project is within a validly designated wildland-urban interface. To some extent, we already — I think we already decided that. That's the problem.  We decided that — this court held that we can't rely on the community wildfire protection plan alone. But there was other evidence in the scoping notice that this is very near the town's — But you would try to show that it is still within the definition, notwithstanding — Right. And this brings up the issue that the requirement that you exhaust your issues, which, by the way, the Supreme Court hasn't used the term issue exhaustion in the NEPA context. That term's been only used in the — so I think we'll stick with waiver. But the requirement that you raise your issues before the agency or else you can't bring them in court is intimately tied up with the requirement that the agency's decision be defended on the reasons given by the agency. If the agency isn't given notice of the complaint, of the objection, then how is it supposed to have squarely addressed it?  So the structure of administrative review — you know, APA review in the courts really depends on the plaintiffs taking advantage of the opportunity that notice-incoming gives them and raising their objections before the agency. And I would just like to close, if I'm out of time, with the Supreme Court was very concerned about the misuse of this process. And cautioned Vermont Yankee that administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that ought to be considered. And then after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated on the ground that the agency failed to consider matters presented. When you think about, in these NEPA cases, the remedy, if you win, is a do-over. So they have every incentive for a delay and not raising the issues. And I think the Supreme Court took that into account when they created this line of cases that governs this case. Thank you, Counsel. We'll give you time for rebuttal. Thank you, Your Honors. I have just three points I'd like to address. First, this case is not like Public Citizen or Vermont Yankee. Both of those cases had full administrative review proceedings and full NEPA analyses. What exactly is the difference in kind, though, between the notice and comment that was given in those cases and the notice and opportunity to comment that was given here? I mean, it seems that there was actual notice that's conceded. There was actual response and comment, extensive and actual response by the agency to those comments. I understand that there's a formal difference because one was in an EA and one was in the scoping that wasn't actually where there was a claimed exemption from EA, but in the kind of notice and comment opportunity that was given here. So Vermont Yankee had a mandatory adjudicatory hearing. That's an adversarial proceeding, and that puts them right in the space of where Carr said it would be appropriate to have issue exhaustion. In Public Citizen, it was a formal APA notice and comment rulemaking procedure and then a full environmental assessment. And so that's a common area where we apply issue exhaustion in formal notice and comment APA rulemaking because that is deemed to be adversarial proceedings. Where is there a case that actually describes formal notice and comment rulemaking as adversarial? Your Honor, I would ask to be able to permit a supplemental brief on that if that's an issue that the Court wants to hear. Another important point, though, is that because Public Citizen had a full EA and Vermont Yankee had a full EIS, if we applied this statute that we're actually talking about today, 6515, scoping comments would have been required because under Section 6515, if they do an EA or if they do an EIS, then that does trigger issue exhaustion and that does trigger a mandatory requirement for comments. And so all of the cases that are being cited by the government, if they would have happened under the Healthy Forest Restoration Act, we wouldn't be here today because there would be no dispute that there would have been a public comment requirement. But the fact is we didn't have that here. But you just thought that when you submitted your hundreds of pages, that was just a voluntary process. It didn't have any implication. It was absolutely voluntary, Your Honor. But isn't comment always voluntary? I mean, you put it out for notice and comment. There's no requirement. I mean, the statute can't require you to file a comment. It puts it out for notice and comment. They consider your comments and they make adjustments based on that. No, Your Honor, Section 6515 absolutely requires public comments if there is an EA or an EIS. And I want to just touch, too, on the concurrence in Carr, which was Justice Thomas, Gorsuch, and Barrett's concurrences really do talk about that. They say, Unsurprising reminders that a claimant should not sit idly on the sidelines hardly demands that the penalty for overlooking an argument is forfeiture. So this general idea that you had the opportunity to comment and maybe you should have, that doesn't necessarily mean that in response you have this extreme penalty of forfeiture. That's 593 U.S. at 97. And then the Court went on in the concurrence to say, Because these proceedings bear little resemblance to adversarial litigation, I agree with the Court that there is no need for an exhaustion rule and I would end the analysis there. And so that goes back to Judge Sung's earlier question about these other considerations. The concurrence in Carr actually said, We wouldn't have even gotten to those because we find that this is so unlike an adversarial proceeding that we should not impose issue exhaustion. And we end it there. And then finally, just one last point, I also just want to mention Justice O'Connor's concurrence in Sims where she said, I write separately because in my view the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for our decision that's 530 U.S. at 113 to 114. And I just want to emphasize that there was no notice to the public that there was an issue exhaustion requirement. There was no notice to the public that a failure to raise a specific issue in response to a scoping notice would then result of a forfeiture. I mean, I think we agree with you. I don't think there's a lot of dispute about that. That's all I have. All right. Thank you. Thank you so much. Thank you to both parties for your arguments in this case. You've given us a lot to think about and the case is now submitted. And that concludes our arguments for the day. Thank you. All rise.
judges: NELSON, FORREST, SUNG